## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIRCHHOFF-CONSIGLI CONSTRUCTION MANAGEMENT, LLC, | : : : | No.: 4:15-CV-01462 |
| Plaintiff, | : : | (Judge Brann) |
| v. | : : | |
| DELUXE BUILDING SYSTEMS, INC., | : : : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### AUGUST 22, 2017

## I.    BACKGROUND

Plaintiff, Kirchhoff-Consigli Construction Management, LLC, (hereinafter "KCCM") filed this action against Defendant, Deluxe Building Systems, Inc., a subcontractor, (hereinafter "Deluxe"); KCCM is the general contractor for Pace University's expansion of its Pleasantville, New York campus.  KCCM subcontracted with Deluxe to build modular dormitories at its Berwick, Pennsylvania facility and deliver those units to the Pace campus.

KCCM filed a five count complaint against Deluxe.[1]  Count I alleges breach of contract, Count II is for replevin, Counts III and IV are for injunctive relief,[2] and

---

[1]    July 28, 2015, ECF No. 1.

Count V is for conversion. Deluxe, in turn, filed two counterclaims against

KCCM, alleging breach of contract in Count I and unjust enrichment in Count II.[3]

Exactly one year after the complaint was filed, on August 26, 2016, Deluxe

filed a Motion to Amend its counterclaim.[4] The Court delayed ruling on the

motion because the parties requested referral to mediation.[5] The case trial track in

effect at that time was set aside, and after some delays, the matter proceeded to an

unsuccessful mediation.

I now take up the motion, which was fully briefed last year and is overripe

for disposition. For the following reasons I will grant the motion in part and deny

it in part.

## II.    DISCUSSION

As part of the subcontract between the parties (hereinafter "the contract" or

"the subcontract"), Deluxe was required to secure an Irrevocable Standby Letter of

Credit[6] in the amount of one-million dollars, naming KCCM as beneficiary. On

---

[2] A hearing on KCCM's motion for preliminary injunction was held on August 24, 2015. I granted the motion from the bench, which was subsequently memorialized by Order on August 28, 2015.

[3] August 21, 2015, ECF No. 22.

[4] August 26, 2016, ECF No. 45.

[5] ECF No. 40.

[6] The parties at times refer to it as a letter of credit. While letters of credit and irrevocable standby letters of credit are treated the same under the Uniform Commercial Code, it is important to recognize that they are distinct documents utilized differently (as explained later

July 28, 2016, KCCM sent the bank a drawing certificate requesting a withdrawal of the entire one-million dollars.  The bank duly authorized the withdrawal of one-million dollars to KCCM (hereinafter "the draw").

Deluxe now moves to amend Counts I and II of its counterclaims to include the draw in its breach of contract and unjust enrichment claims, respectively. Deluxe also seeks to add a third counterclaim to allege breach of warranty under the Uniform Commercial Code.

### A.    Amending a Pleading

Amendment prior to trial is governed by Federal Rule of Civil Procedure 15(a).  More than 21 days after filing a pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave."[7]  The rule continues, "the court should freely give leave when justice so requires."[8]

Sixty years ago, the United States Supreme Court admonished the bench and bar that "the federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the

---

in the body of this Memorandum Opinion).  I've cited to the parties use of terms, but with the understanding that the document at issue here is an irrevocable standby letter of credit.

[7]  Fed. R. Civ. P. 15(a)(2).

[8]  *Id.*

merits."[9] Expounding further on Rule 15 the Supreme Court later explained that "if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."[10] "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"[11]

A District Court has the discretion to grant or deny the opportunity to amend.[12] However, that discretion is tempered by guidance from the United States Court of Appeals for the Third Circuit which has stated that "in evaluating challenges to the denial of opportunity to amend we have held consistently that leave to amend should be granted freely."[13]

Wright & Miller's Federal Practice and Procedure explains that "perhaps the most important factor listed by the Court for denying leave to amend is that the

---

[9]   *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

[10]   *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[11]   *Id.*

[12]   *See id.*

[13]   *Dole v. Arco Chem. Co.,* 921 F.2d 484, 486 (3d Cir. 1990)

opposing party will be prejudiced if the movant is permitted to alter a pleading."[14]

"Conversely, if the court is persuaded that no prejudice will accrue, the amendment should be allowed."[15] "Thus, the facts of each case must be examined to determine if the threat of prejudice is sufficient to justify denying leave to amend."[16]

Our Court of Appeals agrees. "The trial court's discretion under Rule 15, however, must be tempered by considerations of prejudice to the non-moving party, for undue prejudice is the touchstone for the denial of leave to amend."[17] "But the non-moving party must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely."[18]

"[I]f the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial."[19] "Likewise, if the proposed change clearly is frivolous or advances a

---

[14] § 1487Amendments With Leave of Court—When Leave to Amend May Be Denied, 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.).

[15] *Id.*

[16] *Id.*

[17] *Heyl & Patterson Int'l, Inc. v. F. D. Rich Hous. of Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981) (internal citation omitted).

[18] *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (internal citation omitted).

[19] *Ross v. Jolly*, 151 F.R.D. 562, 565 (E.D. Pa. 1993).

claim or defense that is legally insufficient on its face, the court may deny leave to amend."[20]

Here, KCCM argues that amendment is futile.

## B. Motion to Dismiss Standard of Review

"Where a defendant raises futility of amendment as a defense, the Court must apply the standard of a motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6)."[21] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[22] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[24] Moreover, "[a]sking for

---

[20]  *Id.*

[21]  *Provenzano v. Integrated Genetics*, 22 F. Supp. 2d 406, 411 (D.N.J. 1998), *and see Powell v. Wetzel,* No. 1:12-CV-2455, 2016 WL 8731445, at *3 (M.D. Pa. Sept. 13, 2016) (Schwab, M.J.), *report and recommendation adopted,* No. 1:12-CV-02455, 2016 WL 8710470 (M.D. Pa. Sept. 30, 2016) ("Thus, in determining whether an amendment would be futile, we apply the same standard as we apply in determining whether a complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6)."  "In other words, '[t]he District Court determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to the plaintiff.'"

[22]  *Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. 544, 570 (2007).

[23]  *Iqbal*, 556 U.S. at 678.

[24]  *Connelly v. Lane Const. Corp.*, No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016) (Jordan, J.) (internal quotations and citations omitted).

plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[25] The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[26] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[27]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[28] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[29]

In this matter, KCCM argues that amendment is futile because Deluxe materially breached the subcontract. Thus, Deluxe is estopped from claiming KCCM defaulted as Deluxe is the party responsible for the initial breach.

---

[25] *Twombly*, 550 U.S. at 556.

[26] *Iqbal*, 556 U.S. at 679.

[27] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[28] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[29] *Iqbal*, 556 U.S. at 678 (internal citations omitted).

**C.   Terms of the Subcontract Relevant to the Irrevocable Standby Letter of Credit**

Attachment E to the subcontract between KCCM and Deluxe required that Deluxe obtain the irrevocable standby letter of credit.  I set it forth in its entirety below:

<u>Attachment E</u>

To the Subcontract between Kirchhoff-Consigli Construction Management (KCCM) and DeLuxe Building Systems (DBS), for KCCM Project # 421, Pace University Master Plan Phase 1A

1.  As security for its faithful performance of all of its obligations under the Subcontract, DBS shall furnish an irrevocable standby letter of credit in the amount of One Million Dollars ($1,000,000), in the form attached hereto, within ten (10) days of the execution by both parties of this Subcontract.  The failure to furnish this letter of credit shall be deemed a material breach of this Subcontract, and grounds for immediate termination after ten (10) days' notice to DBS and the failure of DBS to so furnish the letter of credit within that ten (10) day period.  Upon such termination, KCCM shall be entitled to all remedies provided for in the Subcontract, as well as any other remedies available at law or in equity.

2.  DBS's principal Donald E. Meske shall execute a Personal Guaranty of the form attached hereto, simultaneously with DBS's execution of this Subcontract.

3.  DBS shall execute the FIRST AMENDMENT TO SUBCONTRACT attached hereto simultaneously with its execution of this Subcontract.

4.  Should DBS fail to meet any of the scheduled milestones identified in Exhibit E, Project Schedule Requirements, of this Subcontract, provided KCCM is current in its payments to DBS pursuant to the terms of the Subcontract, KCCM may assess liquidated damages against DBS as follows:

a. Five Thousand Dollars ($5,000) per day for each of the first thirty (30) days past the schedule milestone that DBS has failed to complete the task associated with the scheduled milestone.
b. Ten Thousand ($10,000) per day starting on the thirty-first (31st) day and for every day thereafter that DBS has failed to complete the task associated with the scheduled milestone.

KCCM shall be entitled to withhold such liquidated damages from amounts otherwise due to DBS under the Subcontract. In the event that DBS shall recover the Subcontract schedule and ultimately meet the completion date, the amount of liquidated damages withheld shall be restored to the Subcontract price, less the sum of any and all costs incurred by KCCM in connection with maintaining and/or recovering the Subcontract schedule by reason of the failure of DBS to meet milestones, and paid to Subcontractor with its payment for its next regularly scheduled requisition; it is expressly agreed and acknowledged that in its sole discretion KCCM may expend any and all amounts reasonably necessary to mitigate the impacts of any DBS delay to the Project.

The amounts set forth above are fixed and agreed on by and between the KCCM and DBS because of the impracticability and difficulty fixing and ascertaining the true value of the damages KCCM will sustain by failure of the DBS to complete its Work in accordance with the scheduled milestones, such as loss of revenue, interest charges, liquidated damages assessed by the project Owner against KCCM, delays caused to other contractors, and other damages. Said amounts are agreed to be a reasonable estimate of the amount of damages which KCCM will sustain and said amount shall be deducted or withheld from any monies due or that may become due to DBS, and if said monies are insufficient to cover said damages, then DBS shall pay the amount of the difference.

The right of KCCM to assess liquidated damages as provided for herein is independent of KCCM's right to backcharge DBS for liquidated damages assessed against KCCM by the Owner that result from delay or other actions or inactions on the part of DBS.

5. In addition to the rights and remedies afforded it under applicable law and under other provisions of this Subcontract, should DBS fail to meet any of the scheduled milestones identified in Exhibit E associated with its modular manufacturing, or should DBS otherwise breach a material condition of this Subcontract while it is engaged in the modular manufacturing for this Project, then KCCM or its designee shall be entitled to enter into DBS's facilities to inspect he work and the manufacturing process, and shall be afforded direct access to any/all DBS executive leadership, management, and production supervisory personnel for the purpose of communicating about the status and completion of the work. During the course of such communication, DBS personnel shall truthfully and accurately answer all questions by KCCM or its designee about the status of and plans for completion of its work, DBS's financials for the project, and other topics relevant to DBS's successful completion of its work, and shall receive any suggestions or guidance that KCCM or its designee may offer. [30]

**D.    Terms of the Irrevocable Standby Letter of Credit**

The text of the revised irrevocable standby letter of credit at issue, dated

October 2, 2014 is also set forth, in full.

Ladies & Gentlemen:

We, First Keystone Community Bank (the "Bank"), hereby establish and issue in favor of Beneficiary, Kirchhoff-Consigli Construction Management, LLC ("Beneficiary") this Amended Irrevocable Standby Letter of Credit No. 224 (the "Letter of Credit") in the aggregate amount not exceeding One Million Dollars and No Cents ($1,000,000.00) in support of the liabilities and obligations of the Account Party, DeLuxe Building Systems, Inc. and Donald E. Meske to the Beneficiary, which will be available upon presentment of the Beneficiary's draft effective immediately and expiring on the Expiration Date (as hereinafter defined), providing Kirchhoff-Consigli has no default toward DeLuxe Building Systems or Donald E. Meske.

---

[30]   ECF No. 5-5 at 60-61.

<u>This Amended Irrevocable Letter of Credit replaces and supersedes the original version dated September 29, 2014.</u>

Each draft drawn by the Beneficiary must be marked "Drawn under First Keystone Community Bank Irrevocable Standby letter of Credit No. 224" and be accompanied by the original of this letter, or if the original has been returned to the Bank, a certified copy thereof, and a statements signed by an authorized representative of the Beneficiary that the amount of the draft does not exceed the amount due and owing to the Beneficiary from the Account Party, and there has been a default by Account Party under the terms of a Subcontract between Deluxe Building Systems, Inc. ("Subcontractor" and the Beneficiary dated June 10, 2014, together with any amendments thereto or personal guarantees thereof ("Subcontract") beyond any applicable cure period or failure by Subcontractor to perform or pay for any of the obligations required by the Subcontract or to pay to the Beneficiary any damages or other amounts which the Subcontractor or Account Party is required to pay to the Beneficiary under the terms of the Subcontract provided therewith. This Letter of Credit shall be released and the original returned to the Bank by the Beneficiary within 10 days of the date that het final payment of retainage under the Subcontract becomes due to the Subcontractor.

Beneficiary under the terms of the Subcontract provided therewith. This Letter of Credit shall be released and the original returned to the Bank by the Beneficiary within 10 days of the date that the final payment of retainage under the Subcontract becomes due to the Subcontractor.

The Bank is not to be called upon to resolve issues of law or fact between the Beneficiary and Account Party. Any draft(s) drawn hereunder and in compliance with the terms of this Letter of Credit will be duly honored if drawn and presented to our office at the above address prior to the expiration of this Letter of Credit. Partial drawings are permitted. The Beneficiary hereby agrees to endorse of the reverse side of the original Letter of Credit the amount(s) of any such partial draft(s) which Beneficiary is paid, and to surrender the

original Letter of Credit to the Bank together with any draft which exhaust the amount available under this Letter of Credit.[31]

### E.  Text of the Drawing Certificate and Accompanying Certification

Anthony M. Consigli, the Chief Executive Officer of KCCM signed and

issued a drawing certificate to the bank.  That drawing certificate is also set forth in

pertinent part:

> The undersigned, Kirchhoff-Consigli Construction Management, LLC, now known as Consigli Construction NY, LLC (the "Beneficiary"), hereby certifies to First Keystone Community Bank as follows:
>
> The Beneficiary is entitled to draw upon the Letter of Credit in the amount of $1,000,000.00, pursuant to that certain Subcontract between DeLuxe Building Systems, Inc. (the "Account Party") and the Beneficiary dated June 10, 2014, together with any amendments thereto or personal guarantees thereof (the "Subcontract").
>
> Pursuant to the Letter of Credit, this Drawing Certificate is accompanied by the following documents:
>
> 1. An original of the Letter of Credit; and
> 2. A statement signed by an authorized representative of the Beneficiary.[32]

The attached certification signed by Mr. Consigli is additionally noted as

follows:

> The undersigned Anthony M. Consigli, Chief Executive Officer of Kirchhoff-Consigli Construction Management, LLC, now known as

---

[31]  ECF No. 45-1 at 4-5.

[32]  ECF No. 45-2 at 4.

Consigli Construction NY, LLC, does hereby certify to First Keystone Community Bank, as follows:

1. I am the duly elected Chief Executive Officer of Kirchhoff-Consigli Construction Management, LLC, now known as Consigli Construction NY, LLC, the beneficiary ("Beneficiary") under that certain Irrevocable Standby Letter of Credit Number 224, as amended by Amendment to Irrevocable Standby Letter of Credit Number 224 (the "Letter of Credit"), and I am authorized to submit this certification on behalf of the Beneficiary.

2. The Beneficiary is now known as Consigli Construction NY, LLC, as evidenced by the certificate issued by the Secretary of State of the State of New York on July 26, 2016, a copy of which is attached as <u>Exhibit A.</u>

3. I am making this certification pursuant to the terms of the Letter of Credit and that certain Drawing Certificate dated July 28, 2016 (the "Drawing Certificate"), pursuant to which the Beneficiary is drawing on the Letter of Credit in the amount of One Million Dollars ($1,000,000.00) (the "Draw").

4. DeLuxe Building Systems, Inc. (the "Account Party") is in default beyond any applicable cure period of its obligations to the Beneficiary under that certain Subcontract between the Account Party and the Beneficiary dated June 10, 2014, together with any amendments thereto or personal guarantees thereof (the "Subcontract"). The Account Party has failed to perform its obligations and pay amounts due to the Beneficiary under the Subcontract.

5. As of the date of this certification, the Account Party owes at least $1,180,566 to the Beneficiary for failure to perform its obligations under the Subcontract, and such amount owed by the Account Party continues to increase because the Account Party's scope of work is not completed and the Account Party ceased performing all services under the Subcontract.

6. The amount of the Draw does not exceed the amount due and owing to the Beneficiary from the Account Party.[33]

This certification was dated July 28, 2016 and signed by Mr. Consigli.

### F.    Amendment to Count I, Breach of Contract

As written presently, Count I of Deluxe's counterclaims against KCCM is a claim entitled "Breach of Contract - Failure to Pay."[34]  Deluxe originally asserted in this claim that "KCCM was required to…make prompt payments to Deluxe…[and that] KCCM breached the Subcontract by…failing and refusing to make payment for work performed by Deluxe."[35]  The demand in Count I is for damages "in excess of $1,500,000."[36]

The proposed amendment to Count I changes the title to succinctly "Breach of Contract."[37]  The amended counterclaim contains the language quoted above but adds the following: "Further the Letter of Credit could only be drawn upon if KCCM was not in default of its obligations under the Subcontract and if sums were owed to KCCM."[38] Deluxe also proposes to add language that "KCCM breached the Subcontract and the Letter of Credit by drawing on the Letter of Credit at a

_____

[33] ECF No. 45-2 at 5-6.

[34]   ECF No. 22. at 14.

[35]   ECF No. 22 at 14, ¶¶ 9-10.

[36]   ECF No. 22 at 14.

[37]   ECF No. 45-3 at 22 and ECF No. 45-5 at 22.

[38]   ECF No. 45-3 at 22, ¶ 14 and ECF No. 45-4 at 22, ¶ 14.

time when it was in default of its obligations under the Subcontract and at a time when sums were not owed to KCCM."[39]  Finally, Deluxe proposes to change the damages demand to read "As a result of the breaches of the Subcontract and Letter of Credit, Deluxe has incurred, and continues to incur, damages in excess of $1,000,000."[40]

### G.   Amendment to Count II, Unjust Enrichment

Count II, Unjust Enrichment, presently reads in part, "KCCM has been enriched, at Deluxe's expense, by the services and products provided by Deluxe, which have not been paid for by KCCM."[41] Deluxe seeks to amend this sentence to add the following concluding language: "and by the funds received by the wrongful Draw under the Letter of Credit."[42]

### H.   Adding Count III, Breach of Warranty Under the Uniform Commercial Code

Finally, Deluxe seeks to add a third counterclaim, Count III, Breach of Warranty under the Uniform Commercial Code to allege, in relevant part: "Pursuant to section 5-110 of the Uniform Commercial Code, as codified in Pennsylvania at 13 Pa.C.S.A. § 5110, if a letter of credit is presented and honored, the beneficiary (KCCM), among other things, warrants to the applicant (Deluxe)

---

[39]   ECF No. 45-3 at 22, ¶ 15 and ECF No. 45-4 at 23, ¶ 15.

[40]   ECF No. 45-3 at 23, ¶ 16 and ECF No. 45-4 at 23, ¶ 16.

[41]   ECF No. 22 at 14, ¶ 13.

[42]   ECF No. 45-3 at 23, ¶ 18 and ECF No. 45-4 at 24, ¶ 18.

that the drawing on the letter of credit does not violate any agreement between the applicant and beneficiary or any other agreement intended by them to be augmented by the letter of credit (the "UCC Letter of Credit Warranty").[43] "KCCM's draw on the Letter of Credit is in breach of the UCC Letter of Credit Warranty because KCCM has defaulted under the Subcontract, sums were not owed by Deluxe to KCCM and KCCM violated the provisions of the Letter of Credit." [44]

## I.    Amendment will be permitted as to Counts I and II

KCCM initially argues that amendment should not be permitted because Deluxe's principal, Dan Meske, conceded in his testimony at the August 24, 2015 preliminary injunction hearing[45] that Deluxe had defaulted on the subcontract. KCCM argues that Deluxe is estopped from claiming KCCM's default when Deluxe is the party responsible for the initial breach.

---

[43]   ECF No. 45-3 at 23, ¶ 21 and ECF No. 45-4 at 25, ¶ 21.

[44]   ECF No. 45-3 at 24, ¶ 22 and ECF No. 45-4 at 25, ¶ 22.

[45]   The testimony that KCCM characterizes as Dan Meske's acknowledgment of default is as follows.

> Q:  Are you also aware that they have reserved the right, under article eight, that if they pay your vendors and suppliers and your payroll that they can offset those payments against what you're due?
>
> A:  Yes
>
> Q:  And there is no dispute here that those things happened.  Correct?
>
> A:  That's correct.

The flaw in KCCM's argument is that it is asking the Court to make a factual finding as to the ultimate issue in dispute in this action: who defaulted on the subcontract at issue, Plaintiff or Defendant? I simply cannot make this factual finding at this stage of the proceedings. Moreover, KCCM is asking the Court to make a factual finding based on a proceeding that dealt with the "likelihood of success on the merits" but was not intended as a resolution of the ultimate issue on the merits.[46] It is well-settled that "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits,"[47]

The current procedural posture of this matter is such that I must accept the facts as alleged by Deluxe as true, and for the purposes of today's motion accept its contention that KCCM defaulted. As such, the above cited amendments to Counts I and II would survive a motion to dismiss and amendment would not be futile.

Viewing the facts in that light, therefore, amendment will be permitted as there is no undue prejudice to KCCM in allowing amendment. "Prejudice becomes

---

[46] I granted its motion for preliminary injunction, thus finding a <u>likelihood</u> of success on the merits that Deluxe, and not KCCM, defaulted. But for me to <u>hold</u> as such on the merits now would be an overreach of my authority.

[47] *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004), *citing University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981).

'undue' when the opponent shows it would be unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered."[48]

If KCCM drew on the one-million dollar irrevocable standby letter of credit in support of monies it claims Deluxe owed to it, presumably that one-million dollar draw would be part of the evidence KCCM would present in its case in chief as to any net damages due.[49] Moreover, as to Counts I and II, KCCM has prepared a defense to the breach of contract and unjust enrichment claims as far back as August 21, 2015 when the answer and counterclaims were filed. The proposed amendment as to those two counts merely expands the scope of the factual allegations from the subcontract exclusively to also include the irrevocable standby letter of credit. Additionally, discovery is still ongoing, and dispositive motions are not due until December 31, 2017. I conclude that there is little prejudice to KCCM in permitting amendment.

### J. Deluxe will not be permitted to add counterclaim Count III.

KCCM next argues that "Deluxe's motion to amend is also procedurally deficient to the extent that the amended complaint fails to state a claim against

---

[48] *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990)

[49] In fact, irrevocable standby letters of credit have been described aptly in the following manner: "If Customer defaults, Beneficiary can receive what are in effect liquidated damages without incurring any litigation costs." Michael Stern, The Independence Rule in Standby Letters of Credit, 52 U. Chi. L. Rev. 218, 234 (1985)

KCCM for Breach of Warranty under the Uniform Commercial Code."[50]

Pennsylvania's codification of the commercial code states:

> (a) Warranties generally.--If its presentation is honored, the beneficiary warrants:
>> (1) to the issuer, any other person to whom presentation is made and the applicant that there is no fraud or forgery of the kind described in section 5109(a) (relating to fraud and forgery generally); and
>> (2) to the applicant that the drawing does not violate any agreement between the applicant and beneficiary or any other agreement intended by them to be augmented by the letter of credit.[51]

The Uniform Commercial Code defines a letter of credit as "a definite undertaking that satisfies the requirements of the Section 5-104 by an issuer to a beneficiary at the request or for the account of an applicant or, in the case of a financial institution, to itself or for its own account, to honor a documentary presentation by payment or delivery of an item of value."[52]

The Westlaw annotations to the statue state "this warranty has primary application in standby letters of credit or other circumstances where the applicant is not a party to an underlying contract with the beneficiary."[53] "It is not a warranty that the statements made on the presentation of the documents presented are truthful nor is it a warranty that the documents strictly comply under Section 5-

---

[50]  ECF No. 47 at 3.

[51]  13 Pa.C.S.A. § 5110.

[52]  U.C.C. § 5-102.

[53]  13 Pa.C.S.A. § 5110 note 2.

108(a)."[54] "It is a warranty that the beneficiary has performed all the acts expressly and implicitly necessary under any underlying agreement to entitle the beneficiary to honor."[55] "If, for example, an underlying sales contract authorized the beneficiary to draw only upon 'due performance' and the beneficiary drew even though it had breached the underlying contract by delivering defective goods, honor of its draw would break the warranty."[56] "By the same token, if the underlying contract authorized the beneficiary to draw only upon actual default or upon its or a third party's determination of default by the applicant and if the beneficiary drew in violation of its authorization, then upon honor of its draw the warranty would be breached."[57] "In many cases, therefore, the documents presented to the issuer will contain inaccurate statements (concerning the goods delivered or concerning default or other matters), but the breach of warranty arises not because the statements are untrue but because the beneficiary's drawing violated its express or implied obligations in the underlying transaction."[58]

---

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.*

"An 'irrevocable standby letter of credit,' is different from a standard commercial letter of credit."[59] "The latter is a simple payment mechanism."[60] "Rather than a buyer promising to pay seller, a buyer/account party has issuer promise to pay a seller/beneficiary; payment is expected to occur through the issuer."[61] "In contrast, the standby letter of credit is merely a backup."[62] "The beneficiary makes proper demand upon the issuer only if the account party fails to pay or perform."[63] "The Uniform Commercial Code makes no distinction between these different uses of a letter of credit."[64] "The standby letter of credit differs from the traditional letter of credit in that the beneficiary may draw on the standby letter of credit only after the customer defaults on the underlying contract."[65] "[U]nder the standby letter of credit, the beneficiary usually generates all of the necessary documents himself (usually a simple statement that the customer is in default)."[66] "The standby letter of credit allows the beneficiary to recover damages simply by asserting that the customer has defaulted on the contract; except where the fraud in

---

[59] *Arbest Construction Co. v. First Nat'l Bank & Trust Co. of Oklahoma City*, 777 F.2d 581, 585 (10th Cir. 1985).

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] 18 Summ. Pa. Jur. 2d Commercial Law § 15:2 (2d ed.).

[65] Michael Stern, The Independence Rule in Standby Letters of Credit, 52 U. Chi. L. Rev. 218, 219–20 (1985).

[66] *Id.*

the transaction exception applies, the issuer is not permitted to refuse payment based either on its belief that the beneficiary's assertion is false or on the existence of any defenses that the customer may have on the underlying contract."[67]

"Letters of credit serve international commerce by providing assurance of prompt payment at minimal cost."[68] "In the ordinary letter of credit transaction, there are at least three distinct agreements: 'the underlying contract between the customer and the beneficiary which gave rise to their resort to the letter of credit mechanism to arrange payment; the contract between the bank and its customer regarding the issuance of the letter and reimbursement of the bank upon its honoring a demand for payment; and the letter of credit itself, obligating the bank to pay the beneficiary.'"[69] "Customer also bears the risk that Beneficiary will demand payment without justification—that is, that Beneficiary will assert that Customer has defaulted when it knows that Customer has complied with the terms of the contract."[70]

---

[67] *Id.*

[68] *Sound of Mkt. St., Inc. v. Cont'l Bank Int'l*, 819 F.2d 384, 388 (3d Cir. 1987).

[69] *Id. citing Insurance Co. of North America v. Heritage Bank, N.A.,* 595 F.2d 171, 173 (3d Cir.1979); *accord Voest-Alpine International Corp. v. Chase Manhattan Bank, N.A.,* 707 F.2d 680, 682 (2d Cir.1983); *First Commercial Bank,* 486 N.Y.S.2d 718, 475 N.E.2d at 1258.

[70] Michael Stern, The Independence Rule in Standby Letters of Credit, 52 U. Chi. L. Rev. 218, 234 (1985).

KCCM argues that to state a claim under the UCC, Deluxe must have alleged that the draw is violative of the subcontract, as opposed to violative of the letter of credit itself. I agree.

The subcontract between KCCM and Deluxe states very little regarding the irrevocable standby letter of credit. The only reference to the irrevocable standby letter of credit merely states that Deluxe must obtain one. The subcontract places no limits on KCCM's ability to draw. The sole reference in the subcontract to the irrevocable standby letter of credit states, in pertinent part:

> As security for its faithful performance of all of its obligations under the Subcontract, DBS shall furnish an irrevocable standby letter of credit in the amount of One Million Dollars ($1,000,000), in the form attached hereto, within ten (10) days of the execution by both parties of this Subcontract. The failure to furnish this letter of credit shall be deemed a material breach of this Subcontract, and grounds for immediate termination after ten (10) days' notice to DBS and the failure of DBS to so furnish the letter of credit within that ten (10) day period. Upon such termination, KCCM shall be entitled to all remedies provided for in the Subcontract, as well as any other remedies available at law or in equity.

The UCC itself notes, as relevant to the parties here, "if its presentation is honored, the beneficiary [here, KCCM,] warrants to the applicant [here, Deluxe] that the drawing does not violate any agreement between the applicant [Deluxe] and beneficiary [KCCM] or any other agreement intended by them to be augmented by the letter of credit."[71]

---

[71]  13 Pa. C.S.A. § 5110(a)(2).

KCCM argues that "in order to state a claim under the statute, a claimant must demonstrate that a draw is violative of some extraneous agreement, as opposed to the letter of credit itself."[72] The footnote to the *Al Makaaseb Gen. Trading Co.* case KCCM cited to this position states:

> In its motion for reconsideration, plaintiff argues that the revised 2001 version of the Article V is incompatible with the holding in the PNC case.[73] This Court disagrees with plaintiff's assertions and finds that the PNC case remains good law and that the revised Section 5110 does not create a "warranty of veracity." Revised Section 5110 states that a document required for presentation neither be forged or materially fraudulent, nor should it violate any agreement between the applicant and the beneficiary or any other agreement intended by them to be augmented by the letter of credit. As explained below, the Court finds that there is no evidence that the document was forged or materially fraudulent, nor was there evidence that the letter of credit violated any other agreement between USSI and plaintiff or the contracting parties, USSI and VG.[74]

---

[72]  ECF No. 47 at 9.

[73]  *PNC Bank, Nat'l Ass'n v. Liberty Mut. Ins. Co.*, 912 F. Supp. 169 (W.D. Pa.), *aff'd sub nom. PNC Bank Nat. Ass'n v. Liberty Mut. Ins. Co.*, 101 F.3d 691 (3d Cir. 1996) (Bank that had paid $3 million to beneficiary upon presentment of sight draft drawn against irrevocable, standby letter of credit brought action against beneficiary for breach of warranty and fraudulent misrepresentation. On cross-motions for summary judgment and bank's motion to strike affidavit submitted by beneficiary's attorney, the District Court, Cindrich, J., held that: (1) beneficiary did not breach beneficiary warranty by presenting demand for payment containing false recitation of fact; (2) presentment clause in letter of credit did not constitute representation as to facts and thus, could not form basis of claim for fraudulent misrepresentation under Pennsylvania law; (3) attorney's affidavit submitted as expert opinion would not be considered.)

[74]  *Al Makaaseb Gen. Trading Co. v. U.S. Steel Int'l, Inc.,* 412 F. Supp. 2d 485, 495 n. 6 (W.D. Pa. 2006).

Here, KCCM is correct that "Deluxe has not identified any contract provision that prohibited the draw."[75]  Without allegations of how KCCM's draw on the letter of credit violates the subcontract between the parties, proposed amended counterclaim III fails to state a claim.

By obtaining the irrevocable standby letter of credit, Deluxe undertook precisely the risk the document contemplated -- that KCCM would draw on it.[76]  It

---

[75]  ECF No. 47 at 9.

[76]  The risk inherent in obtaining an irrevocable standby letter of credit has been described thusly:

Consider the following hypothetical standby letter of credit transaction. Beneficiary, a corporation, and Customer, a building contractor, enter into a contract under which Customer is to construct an office building in Japan for a contract price of five million dollars. Beneficiary, wishing to be protected in the event that Customer fails to perform, requires Customer to obtain a standby letter of credit in Beneficiary's favor in the amount of $500,000.  Under the terms of the standby letter of credit, Beneficiary is entitled to payment when it presents to the issuing bank a written statement that Customer has defaulted upon the contract. Assuming either that no fraud in the transaction exception to the rule of independence existed or that the parties were unaware of such an exception, would the parties be willing to enter into such an arrangement?

This arrangement has obvious advantages for Beneficiary. If Customer defaults, Beneficiary can receive what are in effect liquidated damages without incurring any litigation costs. Moreover, Beneficiary does not bear the judgment and execution risks that would ordinarily be borne by a party who has the burden of going forward with litigation: Beneficiary avoids the risks that it will lose on procedural grounds or because of the erroneous application of substantive law by a trial court, it avoids evidentiary problems that may weigh heavily against the party having the burden of proof, and it avoids potential difficulties in obtaining satisfaction of any judgment it might obtain. The standby letter of credit shifts all these risks to Customer. Customer also bears the risk that Beneficiary will demand payment without justification—that is, that Beneficiary will assert that Customer has defaulted when it knows that Customer has complied with the terms of the contract.

At first glance, it might appear that neither party would want to contract for this arrangement. If Beneficiary is acting in good faith, it has no intention of making an unjustified demand and therefore would not be expected to bargain for the power to make one. Because Customer and the issuing bank will demand compensation for assuming the risk of such a demand being made, the contract price would be increased without any apparent corresponding

would seem that Deluxe's proposed addition of counterclaim III is merely an

attempt to replead Count I — KCCM should not have taken what is in effect, one-

million dollars in liquidated damages because it asserts that KCCM was in default

---

benefit to Beneficiary. It also appears unlikely that Customer would be willing to assume the risk of an unjustified demand. Customer would certainly require that he be given additional compensation for assuming this risk; but because the risk includes the possibility of Beneficiary's deliberately making a false demand, it would seem impossible to calculate an adequate amount of compensation.

This analysis is incorrect, however, because it fails to take into account the positions of the parties before they agree to the use of a standby letter of credit. In fact, Beneficiary benefits from an absolute rule of independence for three reasons. First, the issuing bank may charge a smaller fee for the standby letter of credit because it knows that it will not become embroiled in litigation with the beneficiary if it is requested to pay under a conforming demand. The reduction in the cost of the standby letter of credit may in turn be passed on to Beneficiary through a reduction in the price of the underlying contract. Second, Beneficiary is assured that Customer will not be able to hold up payment on the standby letter of credit by alleging that a good-faith demand was in fact made in bad faith. Third, Beneficiary also protects itself against the possibility that a court will mistakenly enjoin payment by finding that its honest demand was made in bad faith.

Customer also benefits from the use of a standby letter of credit under an absolute rule of independence. It is simplistic to conclude either that Customer would agree to the use of the standby letter of credit only out of ignorance of the consequences or that the transaction must be the result of superior bargaining power on the part of Beneficiary. Customer will only agree to the use of a standby letter of credit if Beneficiary compensates him for the risk of an unjustified demand. If Customer believes that Beneficiary would be likely to demand payment without justification, the compensation it would require would be so high that Beneficiary would be unwilling to enter into the transaction. Thus, the parties will use the standby letter of credit only when Customer has a high degree of confidence that Beneficiary will not make an unjustified demand for payment. When this is true, Beneficiary's trustworthiness, combined with the certainty of operation and reduced cost of the standby letter of credit, may make the overall expected cost of this arrangement lower than what the expected cost of the transaction would be in the absence of the standby letter of credit. Customer will still have to be compensated for the risk of an unjustified demand, but this compensation may now be small enough that Beneficiary prefers to use the standby letter of credit rather than some other risk-shifting device.

Michael Stern, The Independence Rule in Standby Letters of Credit, 52 U. Chi. L. Rev. 218, 233–36 (1985).

of the subcontract. But a breach of warranty claim would only apply if KCCM had warranted in the subcontract that it would only draw if certain conditions applied. The text of the subcontract noted above cites no conditions on the draw; in fact, it gives KCCM unfettered discretion to draw. "It is not a warranty that the statements made on the presentation of the documents presented are truthful nor is it a warranty that the documents strictly comply under Section 5-108(a)."[77] "It is a warranty that the beneficiary has performed all the acts expressly and implicitly necessary under any underlying agreement to entitle the beneficiary to honor."[78] Because the subcontract does not specify any acts that either entitle or disallow the beneficiary (here KCCM) to make a draw, Deluxe cannot state a claim under the UCC for breach of warranty.

## III. CONCLUSION

For the foregoing reasons, Deluxe's motion is granted in part and denied in part. Deluxe will be permitted to file an amended answer with counterclaims amending Counts I and II. It may not add its proposed Count III.

---

[77] 13 Pa. C.S. § 5110 note 2.

[78] *Id.*

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
United States District Judge