# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIRCHHOFF-CONSIGLI CONSTRUCTION MANAGEMENT, LLC, | No. 4: 15-CV-01462 |
| | (Judge Brann) |
| Plaintiff, | |
| v. | |
| DELUXE BUILDING SYSTEMS, INC., | |
| Defendant. | |

## MEMORANDUM OPINION

### JUNE 29, 2018

**I. BACKGROUND**

Plaintiff, Kirchhoff-Consigli Construction Management, LLC, (hereinafter "KCCM") filed this action against Defendant, Deluxe Building Systems, Inc., a subcontractor, (hereinafter "Deluxe"); KCCM is the general contractor for Pace University's (hereinafter "Pace") expansion of its Pleasantville, New York campus. KCCM subcontracted with Deluxe to build modular dormitories at its Berwick, Pennsylvania facility and deliver those units to the Pace University campus.

KCCM filed a five count complaint against Deluxe.[1] Count I alleges breach of contract, Count II is for replevin, Counts III and IV are for injunctive relief,[2] and

---

[1] July 28, 2015, ECF No. 1.

Count V is for conversion. Deluxe, in turn, filed two counterclaims against KCCM, alleging breach of contract in Count I and unjust enrichment in Count II.[3]

On December 29, 2017, Deluxe filed a "motion for partial summary judgment striking claim for liquidated damages."[4] The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the motion is denied.[5]

## II. DISCUSSION

### A. Standard of Review

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."[6] Summary judgment is appropriate where "the movant shows that there is no genuine dispute

---

[2] A hearing on KCCM's motion for preliminary injunction was held on August 24, 2015. I granted the motion from the bench, which was subsequently memorialized by Order on August 28, 2015.

[3] February 2, 2018, ECF No. 69.

[4] ECF No. 65.

[5] However, it is important to note that neither party provided the court with a breakdown or calculation of how KCCM arrived at the resultant sum of $8,315,000.00. In fact, the parties note that they intentionally did not provide the Court with this documentation to "preserve the sanctity of the mediation process." ECF No. 66 at 14 n. 2. Thus, this Memorandum Opinion and the attendant Order uphold only the enforceability of the liquidated damages clause, and makes no determination as to the sum demanded.

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

as to any material fact and the movant is entitled to judgment as a matter of law."[7] "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[8] "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[9] "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[10]

"[T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[11] Thus, "[i]f the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence

---

[7] Fed. R. Civ. P. 56(a).

[8] *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex*, 477 U.S. at 322).

[9] *Clark*, 9 F.3d at 326.

[10] *Id*.

[11] *Liberty Lobby, Inc.*, 477 U.S. at 252.

presented."¹² "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."¹³ "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"¹⁴ The evidentiary record at trial, by rule, will typically never surpass that which was compiled during the course of discovery.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."¹⁵ "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."¹⁶

---

¹² *Id.*

¹³ *Id.*

¹⁴ *Id. (quoting Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).

¹⁵ *Celotex*, 477 U.S. at 323 (internal quotations omitted).

¹⁶ *Id.*

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[17] For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[18]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[19] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[20] On motion for summary judgment,

---

[17] *Liberty Lobby*, 477 U.S. at 250.

[18] Fed. R. Civ. P. 56(c)(1).

[19] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003) (Weis, J.).

[20] Fed. R. Civ. P. 56(e)(2).

"[t]he court need consider only the cited materials, but it may consider other materials in the record."[21]

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[22] "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[23] "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[24]

**B. Undisputed Facts**

This is a matter that has been replete with motions, so the parties may be assured that the Court is fully aware of the intricacies of this case. However, for the purposes of the instant motion, I set forth only the facts relevant to the determination of the enforceability of the liquidated damages clause at issue here.

KCCM and Deluxe, both represented by counsel, signed a subcontract on June 10, 2014 for Deluxe to manufacture modular housing units to be used for the construction of two resident housing buildings at Pace University's Pleasantville, New York campus. KCCM is Pace's general contractor hired to build several new

---

[21] Fed. R. Civ. P. 56(c)(3).

[22] *Liberty Lobby*, 477 U.S. at 249.

[23] *Id*.

[24] *Id*. at 249–50 (internal citations omitted).

buildings, including the construction of two new residence halls (Residence Halls A and B).

Within the subcontract, there is a liquidated damages clause, at issue in the instant motion. The clause is copied herein in its entirety:

> 4. Should DBS fail to meet any of the scheduled milestones identified in Exhibit E, Project Schedule Requirements, of this Subcontract, provided KCCM is current in its payments to DBS[25] pursuant to the terms of the Subcontract, KCCM may assess liquidated damages against DBS as follows:
> a. Five Thousand Dollars ($5,000) per day for each of the first thirty (30) days past the schedule milestone that DBS has failed to complete the task associated with the scheduled milestone.
> b. Ten Thousand dollars ($10,000) per day starting on the thirty-first (31st) day and for every day thereafter that DBS has failed to complete the task associated with the scheduled milestone.[26]

In total, KCCM is demanding a sum of $8,315,000.00 from Deluxe for delay damages pursuant to this clause.

The liquidated damages clause between KCCM and Deluxe is, based on, but not identical to, the liquidated damages clause between Pace and KCCM.[27] However, KCCM has been able to ameliorate some of the delays occasioned by Deluxe by having KCCM employees perform some of the necessary subcontracted work and also by hiring other subcontractors to do the work originally

---

[25] Deluxe.

[26] ECF No. 68-8 at 60.

[27] That clause provides "liquidated damages of $5,000.00/day if the Master Project was thirty-one (31) to sixty (60) days late, and $10,000.00/day for every day after the sixty-first (61st) day that the Master Project was not completed." KCCM statement of facts at ¶45.

subcontracted to Deluxe.  As a result of KCCM's mitigation of the delays attributable to Deluxe, Pace has not assessed liquidated damages against KCCM.

**C. Analysis**

    **1.    Choice of Law: Both Commonwealth of Pennsylvania and State of New York law applies to this dispute.**

As an initial matter, both parties agree that there is no choice of law provision in the contract, that Pennsylvania's choice of law rules govern, and that there is no "real conflict" between Pennsylvania's and New York's liquidated damages law.  The Court may rely on both states' laws interchangeably.[28]

    **2.    The liquidated damages claim will not be struck as the clause is reasonable and the actual damages amount was difficult to calculate in advance.**

Liquidated damages are "the sum a party to a contract agrees to pay if he breaks some promise, and which, having been arrived at by a good faith effort to estimate in advance the actual damage that will probably ensue from the breach, is legally recoverable ... if the breach occurs."[29]  The intent is for the parties to "provide for pre-determined liquidated damages in the event one party fails to

---

[28] ECF No. 66 at 9-10 and ECF No. 69 at 9.

[29] *Pantuso Motors, Inc. v. Corestates Bank, N.A.*, 568 Pa. 601, 608–09, 798 A.2d 1277, 1282 (2002), *citing In re Plywood Co. of Pa.*, 425 F.2d 151, 154 (3d Cir.1970) (*quoting Westmount Country Club v. Kameny*, 82 N.J.Super. 200, 197 A.2d 379, 382 (1964)).

perform."[30] Liquidated damages must be reasonable, and to be assessed the harm caused by the breach must be uncertain or difficult to calculate.[31]

Furthermore, it is hornbook law that liquidated damages are not intended to penalize or punish the breaching party.[32] "Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss[;][a] term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty."[33]

Here, KCCM's demand for liquidated damages is stated as follows in the amended complaint: "In addition, Deluxe failed to meet certain enumerated milestone dates set forth in the Subcontract, and, as a result, KCCM has assessed liquidated damages in the amount of $8,315,000.00 in accordance with the terms of Attachment E to the Subcontract."[34] Deluxe argues in its motion for partial summary judgment that the agreement of the parties to liquidated damages in the amount of $5,000 per day for the first thirty days, and $10,000 per day thereafter,

---

[30] *Id.*

[31] *See id, and see Commonwealth v. Musser Forests, Inc.*, 394 Pa. 205 (1958), and Restatement (First) of Contracts 399 (adopted by the Pennsylvania Supreme Court in *Kraft v. Michael* 166 Pa. Super 57 (1950), and *Harris v. Dawson*, 239 Pa. Super. Ct.316 (1976), and *Holt's Cirgar Co. v. 222 Liberty Associates*, 404 Pa. Super. Ct.578 (1991).

[32] *See id.*

[33] *Geisinger Clinic v. Di Cuccio*, 414 Pa.Super. 85, 99, 606 A.2d 509, 516 (1992)

[34] ECF No. 67 at 17 ¶ 66.

is an unreasonable punishment and should in some fashion be struck. KCCM argues that Deluxe is improperly viewing the liquidated damages provision with the benefit of hindsight; KCCM contends that the Court should look to the time of contracting in order to determine that the liquidated damages provision was reasonable.

To resolve this question, I must "demonstrably consider[] whether the *per diem* stipulation was: (1) chosen due to the difficulties in proving with certainty the precise extent of actual damages for breach, and (2) whether the stipulated sum was agreed to and intended as a good faith pre-estimate of actual damages anticipated from delayed repairs."[35] This is a "mixed factual and legal question"[36] that may be resolved on the papers.

As an initial matter, I note that "parole evidence of prior negotiations offered to describe the manner through which a liquidated damages provision was arrived at, i.e., to explain the terms of a writing, is often probative of the parties' intent."[37] Deluxe argues that the liquidated damages provision is unreasonable and punitive; that the delay damages could have been reasonably estimated in advance; and that

---

[35] *Holt's Cigar Co. v. 222 Liberty Assocs.*, 404 Pa. Super. Ct.578, 588 (1991).
[36] *Id.*
[37] *Id.* at 589.

Pace University did not assess or attempt to assess liquidated damages against KCCM for its alleged failure to meet schedules.[38]

In response, KCCM argues that the "motion for partial summary judgment is meritless as it seeks to evaluate the subject liquidated damage provision, which was originally prepared and agreed-upon by both parties, in terms of its current effect and not in terms of the situation the parties faced at the time the provision was drafted and jointly agreed-upon by the parties."[39] KCCM further argues, "moreover, Deluxe is a sophisticated contractor capable of undertaking multi-million dollar projects, represented by counsel throughout the negotiation of the Subcontract, which weighs in favor of the provisions enforceability."[40]

There is no singular set of factors or test for the Court to utilize in order to determine if a liquidated damages provision should be found to be valid or an invalid penalty. However, there is sufficient case law upon which I may rely as guidance to direct my inquiry. These are "the anticipated profits absent breach,"[41] and "actual damages [], hence whether the stipulation was so grossly

---

[38] *See, eg.,* Deposition Testimony of William Link, ECF No. 65-9 at p 34 lines 8-12; and Deposition Testimony of Gregory Burns, ECF No. 65-18 at p 66-67, lines 14-25, and 1-8 stating that Pace had not, to date, assessed liquidated damages against KCCM.

[39] ECF No. 68 at 7.

[40] ECF No. 68 at 22.

[41] *Holt's Cigar Co.*, 404 Pa. Super. Ct.at 589.

disproportionate to actual damages as to afford [] a windfall."[42] "When, independently of the stipulation, the damages would be wholly uncertain and incapable or very difficult of being ascertained, except by mere conjecture, then the damages will usually be considered liquidated."[43] "A sum fixed as security for the performance of a contract containing a number of stipulations of widely different importance, breaches of some of which are capable of accurate valuation, for any of which the stipulated sum is an excessive compensation, is a penalty;"[44] "the relation which the sum stipulated bears to the extent of the injury which may be caused by the several breaches provided against;"[45] "the case or difficulty of measuring a breach of damages, and such other matters as are legally or necessarily inherent in the transaction."[46]

Deluxe argues first that the liquidated damages provision was intended to be a penalty. The deposition of Mark Zych,[47] a project executive with KCCM, cited by both parties, indicates that he had mixed intentions as to the liquidated damages provision - both to deter delay and to estimate delay damages. Zych stated:

---

[42] *Id.*

[43] *Geisinger Clinic v. Di Cuccio*, 414 Pa. Super. Ct.85, 98–99 (1992).

[44] *Id.*

[45] *Com. v. Musser Forests, Inc.*, 394 Pa. 205, 212 (1958).

[46] *Id.*

[47] Mark Zych is "a project executive for [] KCCM." Affidavit of Mark Zych, ECF No. 68-2 at 1.

Q: "Your liquidated damages claim is basically that as a particular date certain deadlines weren't met and there were daily charges that were incurred as a result; is that correct?"

A: "Yes."[48]

*****

Q: "As part of KCCM liquidated damages claim, is KCCM seeking damages because of modules [that] were not erected by a certain deadline?"

A: "By a certain deadline, yes.

Q: "Now, you told --"

A: "And for various other milestones because each of the liquidated damages provisions apply [to] all of [the] milestones along the way.[49]

*****

Q: "[] In casting the liquidation provision was it your intent to punish Deluxe if they were to breach the contract?"

A: "No. It was to encourage timely compliance with the schedule and performance of their work."

Q: "Is it safe to say that, that intent was to deter a potential breach?

A: "It was a [sic] deter a failure on Deluxe's part that would ultimately negatively impact the success of the project."[50]

*****

---

[48] Deposition Testimony of Mark Zych, ECF No. 65-11 at p 105 lines 11-15.

[49] Deposition Testimony of Mark Zych, ECF No. 65-11 at p 122 lines 9-24.

[50] Deposition Testimony of Mark Zych, ECF No. 65-11 at p 105 lines 11-15.

Q: "[] If there were no liquidated damages clause in the contract, would it have been difficult to determine the actual damages incurred by Deluxe failing to meet one of the project deadlines?"

A: "Yes."[51]

*****

Q: "The dollar daily penalties weren't intended to be an approximation of the actual cost that KCCM would incur if there was a breach of one of the project deadlines?

[]

A: "The dollar amounts were conceived as being [a] reasonable approximation of what damage might be incurred by Consigli as a result of Deluxe's failure to meet their deadlines."[52]

*****

Q: "Those values were identical ot the values for the liquating [sic] damages provisions in the Pace and KCM contract?

A: "Yes, they were."[53]

Additionally, in his affidavit, Zych attested, regarding delays by Deluxe, as follows:

¶ 34. For example, Deluxe failed to meet the milestone dates for the following - (i) shop drawing approvals (155 days late); (ii) completion of making units in the North Wing of Residence Hall B weather tight (51 days late); (iii) completion of making units in the South Wing of Residence Hall B weather tight (40 days late); (iv) completion of the

---

[51] Deposition Testimony of Mark Zych, ECF No. 65-11 at p 123 lines 19-24.

[52] Deposition Testimony of Mark Zych, ECF No. 65-11 at p 123-24 lines 25; 1-9.

[53] Deposition Testimony of Mark Zych, ECF No. 65-11 at p 124 lines 15-18.

- 14 -

> fitout and finish of the units in the North Wing of Residence Hall B (141 days late); and (v) completion of the fitout and finish of the units in the South Wing of Residence Hall B (128 days late).
>
> ¶ 37. Again, at the time Deluxe and KCCM entered into the Subcontract, both parties agreed that it was impracticable and difficult to fix and ascertain the true value of damages that KCCM could sustain as a result of Deluxe's delay and/or failure to complete its work under the Subcontract in accordance with the Subcontract's scheduled milestones.
>
> ¶ 38. This is because the true value of damages that KCCM could sustain is entirely dependent on the type, nature, time, and scope of Deluxe's failure to meet the Subcontract's milestone dates.
>
> ¶ 39. As such, while KCCM was able to track and maintain an accounting of all costs incurred in connection with the actual construction of Residence Hall "A" and Residence Hall "B," it could not accurately account for all of the separate costs incurred as a result of Deluxe's uncontested failure to meet the Subcontract's milestone dates.[54]

Delxue's argument that Zych had mixed motivations with regard to the liquidated damages provision is of little moment. "Subjective intent is of little probative value in assessing the reasonableness of the provision, for the prospect of damages in the event of a breach may always be said to encourage parties to comply with their contractual obligations."[55] "The name by which [a penalty or liquidated damages clause] is called is but of slight weight, the controlling elements being the intent of the parties and the special circumstances of the

---

[54] Affidavit of Mark Zych, ECF No. 68-2 at 10.

[55] *GFI Brokers, LLC v. Santana*, No. 06 CIV. 3988 (GEL), 2009 WL 2482130, at *7 (S.D.N.Y. Aug. 13, 2009).

case."[56] It is clear that the intent of the parties was, as is common in construction contracts, to negotiate and fix a sum in advance, through counsel, to reasonably estimate the resultant damage from a breach.

Deluxe also argues that KCCM would be the recipient of a windfall if the Court were to uphold the liquidated damages clause. I disagree. Deluxe uses a misleading comparator in making its argument. Deluxe argues that the $8,315,000.00 demand for liquidated damages is excessive in comparison to the $1,238,927.55 actual damages suffered by KCCM. This comparison is inaccurate, because the $1,238,927.55 figure is, as Deluxe concedes, the net actual damages to KCCM.[57] Actual damages to KCCM are, in fact, $22,792,859.55.[58] The liquidated damages demand is, therefore, slightly more than one-third of actual damages. That is a reasonable figure. It is not "so grossly disproportionate to actual damages as to afford [] a windfall."[59] Moreover, although actual damages are a useful guide in determining, *post hoc*, if the liquidated damages clause was reasonable at the time of the contract's drafting "as a general rule of law it is not necessary to show any actual damages in order to recover liquidated damages pursuant to a contract

---

[56] *Com. v. Musser Forests, Inc.*, 394 Pa. 205, 212 (1958) *citing Keck v. Bieber,* 148 Pa. 645, 646 (1892).

[57] Def. Br. ECF No. 66 at 17.

[58] Pl. Statement of Facts. ECF No. 68-1 at 7.

[59] Holt's Cigar Co., 404 Pa. Super. Ct.at 589.

providing for liquidated damages."[60]  I conclude in this matter that "the damages named were for the breach of a single stipulation, and were not disproportionate to the loss which would probably result to the defendant from the failure of the plaintiffs to complete their work in time."[61]

I also cite to the matter of *X.L.O. Concrete Corp. v. John T. Brady & Co,*[62] as a comparable, albiet not identical, case where a court upheld a *per diem* liquidated damages clause in a university construction project.  In *X.L.O Concrete*, a court found that a $2,000 liquidated damage clause in a $14,993,000 construction project contract to furnish new residence halls for New York University was valid.[63]  That court found that the liquidated damages clause was not "manifestly disproportionate to the actual damage" and "the amount liquidated bares a reasonable proportion to the probable loss."[64]  The court explained, "The rule is well-established that a valid contractual provision for liquidated damages controls the rights of the parties in the event of a breach, notwithstanding that the stipulated sum may be less than the actual damages allegedly sustained by the injured

---

[60] *Sutter Corp. v. Tri-Boro Mun. Auth.*, 338 Pa. Super. Ct.217, 224, 487 A.2d 933, 936 (1985)

[61] *Kunkle v. Wherry*, 189 Pa. 198, 202, 42 A. 112, 112 (1899).

[62] 104 A.D.2d 181, 184, 482 N.Y.S.2d 476, 479 (1984), aff'd, 66 N.Y.2d 970, 489 N.E.2d 768 (1985).

[63] I note that the decision year in this case was 1984 because, given the passage of thirty-four years since that time, the $2,000 per diem in 1984 dollars is not terribly dissimilar to the $5,000 per diem in 2018 dollars.

[64] *Id.* at 478-9.

party."⁶⁵ "As early as 1902 the Court of Appeals [of the State of New York] recognized that "when the parties by their contract provide for the consequences of a breach, lay down a rule to admeasure the damages and agree when they are to be paid, the remedy thus provided must be exclusively followed.""⁶⁶

"In Pennsylvania, liquidated damage clauses have been universally accepted as a necessary part of the law governing construction contracts."⁶⁷ In the matter at hand, "plaintiff was an experienced contractor which dealt with defendant at arm's length."⁶⁸ Deluxe is not a "a naive entity dealing with the ruthless general contractor,"⁶⁹ but rather a "knowledgeable subcontractor"⁷⁰ in business since 1965. Moreover, as noted repeatedly, Deluxe was represented by counsel during negotiation of the subcontract. "When these factors are considered together with the fact that the sum arrived at was the product of an arms-length transaction between sophisticated businessmen, ably represented by counsel, the sum stated

---

⁶⁵ *Id.* at 479.

⁶⁶ *Id. citing McCready v. Lindenhorn,* 172 N.Y. 400, 409).

⁶⁷ *Sutter Corp.*, 338 Pa. Super. Ct.at 223, *see also In Re: Plywood Co. of Pa.*, 425 F.2d 151 (3rd Cir.1970).

⁶⁸ *Id.*

⁶⁹ *Thomas H. Ross, Inc. v. Seigfreid*, 405 Pa. Super. Ct.558, 566, 592 A.2d 1353, 1358 (1991), *but see Giant Food Stores, Inc. v. Kmart Corp.*, No. CIV. A. 94-6817, 1996 WL 432487 (E.D. Pa. July 30, 1996) *disapproved of on other grounds* ("Thomas H. Ross, Inc., involved a government contract. Historically, Pennsylvania courts have been more likely to enforce a liquidated damages clause in favor of a governmental body because of the effect a breach has on "public convenience."").

⁷⁰ *Id.*

for liquidated damages does not seem to be a sum plainly disproportionate to the possible loss"[71]

## III. CONCLUSION

In sum, "clauses setting forth liquidated damages are enforced where they are reasonable, and fair attempts to fix just compensation for anticipated loss caused by breach of contracts."[72] I find here that "the damages were not a penalty but rather a consequence of [] default.[73]

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[71] *JMD Holding Corp. v. Cong. Fin. Corp.*, 4 N.Y.3d 373, 382–83, 828 N.E.2d 604 (2005) *citing Walter E. Heller & Co., Inc. v American Flyers Airline Corp.*, 459 F.2d 896, 899 (2d Cir 1972).

[72] *Calabro v. Dep't of Aging*, 689 A.2d 347, 351 (Pa. Commw. Ct. 1997).

[73] *Thomas H. Ross, Inc.*, 405 Pa. Super. Ct. at 566.